**In re Anthony J. GENNARO and Carolann Gennaro, Debtors.**

**HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY, Plaintiff,**

v.

**Anthony J. GENNARO and Carolann Gennaro, Defendants.**

**Bankruptcy No. 80–455.**
**Adv. No. 80–381.**

United States Bankruptcy Court,
W. D. Pennsylvania.

March 30, 1981.

Gary P. Nelson, Pittsburgh, Pa., for plaintiff Household Finance.

James J. Conlin, Latrobe, Pa., for defendants Anthony J. & Carolann Gennaro.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

*FACTS*

On April 1, 1980 the debtors filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code. On May 22, 1980 Household Finance Consumer Discount Company (hereafter "Household Finance") filed a Complaint to Have a Debt Declared Non-Dischargeable; the last day to file a Complaint to Determine the Dischargeability of a Debt was May 23, 1980. An Answer was filed by the debtors on October 22, 1980 and a hearing on this matter was held on October 29, 1980.

The Complaint alleges that "On or about August 13, 1979 debtors obtained a refinance of credit from plaintiff and in support of their application submitted written statements respecting their financial condition, that were materially false, and published with the intent to deceive plaintiff into refinancing the obligation." Furthermore, the plaintiff alleges that it relied on the written statements and granted the debtors credit. There is some indication of a refinancing or extension through the new loan. The present balance owed on the loan is $2,268.78. The debtors allege that the written statements made by them in order to obtain the refinancing were not materially false nor were they published with the intent to deceive. They claim that an unnamed employee of the plaintiff instructed them to list only the major obligations. At trial Mr. Zitz, the manager of Household Finance, and Anthony Gennaro, the debtor, testified. The subject Financial Statements submitted by the debtors for their loan were admitted into evidence. On their face the financial statements clearly require that the debtors list all debts. It states in bold letters: "APPLICANT(S) MUST LIST

ALL DEBTS—DO NOT OMIT ANY DEBTS." The debtors listed six debts, and admit that they owed many other debts, some of which were larger than those listed. Furthermore, Carolann and Anthony Gennaro admit that they wrote on the Financial Statements: "I have no other debts." Both Financial Statements are signed by the debtors.

The debtors' defense to these Financial Statements is that they were instructed by an unnamed employee of the plaintiff through a telephone conversation to list only a few of their debts, that there was no need to list all of their debts, that five or six debts was enough, and to certify that the partial list of debts constituted the entire indebtedness.

DISCUSSION

11 U.S.C. § 523, which lists the exceptions to discharge, states:

(a) A discharge under 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive"

Case law interpreting § 17(a)(2) of the Bankruptcy Act appears to be applicable to § 523 of the present Code. The essential two changes in the Code are: 1) § 523 includes the additional words "actual fraud" and 2) requires that a creditor "reasonably relied" upon a financial statement. The new section ". . . codifies current case law e. g., Neal v. Clark, 95 U.S. 704, 24 L.Ed. 586 (1887), which interprets 'fraud' to mean actual or positive fraud rather than fraud implied in law." Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978), 77–79, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862. The "fraud" contemplated by this section must be intentional.

The frauds included in § 523 ". . . are those which in fact involve moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient." 3 Collier on Bankruptcy (15th Ed.), Par. 523.-08[4], page 523–39. It must ". . . affirmatively appear that such representations were knowingly and fraudulently made and that were relied upon by the other party." 3 Collier on Bankruptcy (15th Ed.), Par. 523.08[4], pages 523–40, 523–41. There must be reliance. The law is clear that if the property was obtained prior to the making of any false representation, subsequent misrepresentation will have no effect upon the discharge of the debt. See Danns v. Household Finance Corp., 558 F.2d 114 (1977). The plaintiff must prove that the claimed fraud existed at the inception of the debt and that they relied upon it.

The creditor must carry the burden of persuasion on all of the elements necessary for nondischargeability of a debt, but once the creditor has made a prima face showing that a debtor made a materially false representation in writing and that creditor relied upon such representation to its detriment, the burden of going forward with the evidence shifts to the debtor to show that the debtor had no intent to deceive the creditor; at this juncture the mere introduction of evidence rebutting the presumed fact causes the presumption to disappear.

Our Circuit in 1978 in In re McMillan, 579 F.2d 289, 293, n.5 (3rd Cir. 1978) stated that in order to succeed on a § 17(a)(2) objection the plaintiff must prove: 1) that the bankrupt made the representation; 2) that the representations, when made, were materially false; 3) that he made them with the intention and purpose of deceiving the creditor; 4) that the creditor relied on such

representations; and 5) that the creditor sustained the damage alleged as the proximate result of the representations having been made. See also *HCC Consumer Discount Co. v. Tomeo,* 1 B.R. 673 (Bkrtcy. Court E.D.Pa.1979).

 The facts in this case clearly indicate that the debtors made the representation; that the representation, which included only six debts when in fact there were many more, some of which were larger, was false; that the debtor's knowingly and fraudulently made these representations so that they could obtain the new loan; that the creditor relied on the debtors' financial statements and granted the new loan; that the creditor will sustain a loss if the debt is discharged. Household Finance met its burden to prove that the debtors made a materially false representation in writing upon which Household Finance relied. The debtors' oral testimony attempting to rebut this evidence, by claiming that an unnamed employee of Household Finance advised them by telephone that the debtors need list only five to six of their outstanding debts, was not sufficient to cause the presumption of fraud to disappear, especially when larger debts were not listed. Therefore, the debt owed Household Finance is non-dischargeable.