**In re Rufus C. OGDEN, Jr., Debtor.**

**BARNETT BANK OF COLUMBIA COUNTY, Plaintiff,**

**v.**

**Rufus C. OGDEN, Jr., Defendant.**

**Bankruptcy No. 89–0119–BKC–3P7.**
**Adv. No. 89–82.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 27, 1990.

M. Blair Payne, Lake City, Fla., for plaintiff.

Anne Payne, Jacksonville, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon the complaint of Barnett Bank of Columbia County seeking exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(B) and § 523(a)(6). A trial was held on May 16, 1990, and upon the evidence presented the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Beginning in 1977, Rufus C. Ogden, Jr., ("defendant") executed a series of notes and security agreements with Barnett Bank of Columbia County ("plaintiff"). By 1981, six agreements were made by the parties, giving plaintiff a security interest in 584 cows.

Each security agreement prohibited the defendant from selling or otherwise disposing of the collateral. However, the plaintiff, without objection, allowed the sale of the cattle as long as the proceeds from the sale were delivered to the plaintiff.

A representative of the plaintiff, now deceased, went to the defendant's farm in July, 1983, to inspect the collateral. Records show that he found the debts to be adequately collateralized.

In September, 1983, the plaintiff sought payment of the outstanding notes and, in negotiating the renewal and consolidation, the plaintiff requested a financial statement from the defendant. The defendant submitted a financial statement dated December 31, 1982, and in November, 1983, the parties renewed and consolidated the six security agreements into one and made the cattle (the defendant's entire herd) the collateral.

In 1985, the plaintiff filed suit in state court against the defendant seeking possession of the collateral. In that case the defendant disclosed that he had sold the collateral, and a consent judgment was entered against the defendant for $204,615.71.

The evidence showed that the defendant made over $700,000.00 from cattle sales during the period of 1979 to 1985. He also received $256,000.00 during the period of 1981 to 1985 from cattle operations. The defendant paid on the consolidated notes this period $156,000.00.

The defendant testified that the cattle sale proceeds went into the farm's general operating account. Funds from this account were used to pay farming expenses and all debts, including the cattle notes. The cattle sale proceeds were not paid to the plaintiff nor were they segregated into a separate account.

The financial statement submitted by the defendant in September of 1983, showed that the defendant owned approximately 525 head of cattle valued by him at $182,600.00. However, cattle sales records for the years 1983, 1984, and 1985, support

that in liquidating the herd, the defendant sold all of the 268 head of cattle.

Plaintiff in this adversary proceeding argues that the financial statement submitted by the defendant was false and intended to deceive the plaintiff into renewing and consolidating the loans (11 U.S.C. § 523(a)(2)(B)), and the sale of the cattle resulted in a willful and malicious injury (11 U.S.C. § 523(a)(6)).

## CONCLUSIONS OF LAW

### FALSE FINANCIAL STATEMENTS

■ 11 U.S.C. § 523(a)(2)(B) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive....

Plaintiff bears the burden of proving by clear and convincing evidence the elements set forth in § 523(a)(2)(B). *In re Hunter*, 780 F.2d 1577 (11th Cir.1986); *In re Benore*, 108 B.R. 797 (Bankr.M.D.Fla.1989).

■ It is undisputed that the relationship between the plaintiff and defendant was one of long standing. It is further evident that the financial statement submitted by the defendant in the fall of 1983 was clearly marked December 31, 1982. These two facts lead the Court to conclude that there was no reasonable reliance placed upon the financial statement by the plaintiff. Where a bank relies on stale financial statements and never inquires as to whether the statements actually reflect the debtor's current financial situation, the

bank fails to show reasonable reliance. *In re Benore* at 798; *In re Wing*, 96 B.R. 369, 373 (Bankr.M.D.Fla.1989). Although the plaintiff did minimal investigation of defendant's financial condition, the evidence does not show that the plaintiff sought to verify the financial statement.

The Court also concludes there was not an intent to deceive by the defendant in the submission of the financial statement. No new money or value were received from the renewal of these notes.

It appears to the Court that this was simply another in a series of transactions spanning ten years between a bank and its customer. The Court finds that the plaintiff has not clearly and convincingly proven that it reasonably relied upon a materially false financial statement submitted by the defendant with the intent to deceive.

### WILLFUL AND MALICIOUS INJURY

■ 11 U.S.C. § 523(a)(6) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

This Court has held that the willful sale of collateral in disregard of secured party's rights, even without intent to defraud, excepts a debt from discharge. *In re Howard*, 6 B.R. 256, 258 (Bankr.M.D.Fla. 1980).

The law is well settled that the sale of collateral without the consent of the lienholder constitutes willful and malicious injury giving rise to an exception to discharge under § 523(a)(6). *See, e.g., In re Clark*, 50 B.R. 122 (Bankr.D.N.D.1985); *In re Linklater*, 48 B.R. 916 (Bankr.D.Nev. 1985); *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257 (11th Cir.1988).

In *Matter of Petsch*, 82 B.R. 605 (Bankr. M.D.Fla.1988), the debtor had purchased an automobile and executed a security agreement in favor of the plaintiff. Subsequently, the debtor sold the vehicle. The court held that when a debtor disposes of collat-

eral in contravention of the terms of the security agreement, the unauthorized disposition constitutes a willful and malicious conversion so as to render the debt nondischargeable. *Id.* at 607.

Cases from other jurisdictions are in accord with *Petsch.* In *In re Linklater,* supra, the court held that the debtor's sale of jewelry without the knowledge and consent of the secured creditor constituted a willful and malicious act, and the court held the debt to be nondischargeable. *Id.* at 920.

Two cases that are factually identical to the case at bar are *In re Pommerer,* 10 B.R. 935 (Bankr.D.Minn.1981), and *In re McCloud,* 7 B.R. 819 (Bankr.M.D.Tenn. 1980). In those cases the debtors secured loans giving liens on cattle. The debtors later sold and slaughtered the cattle. The bank was not informed of this and the sale proceeds were not given to reduce the loans. These courts found that the commercial sale of the cattle constituted willful and malicious injury to the creditor's interests in the cattle.

The Court concludes that the plaintiff has clearly and convincingly proven that the defendant's act of selling the cattle without turning over the proceeds to the bank was a willful and malicious injury. The damage judgment of the state court is an exception to discharge in the amount of $204,615.71.

## CONCLUSION

A separate Final Judgment will be entered finding for the defendant as to Count I of the complaint seeking exception based on a false financial statement and for the plaintiff as to Count II excepting the debt from discharge based on the willful and malicious injury caused by defendant.